IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JOHN EDWARD STONE, #295227, | ) ) ) |
| Plaintiff, | ) Civil Action No. 0:04-21860-PMD-BM ) |
| v. | ) ) |
| JON E. OZMINT, DIRECTOR OF SOUTH CAROLINA DEPT. OF CORRECTIONS, | ) **REPORT AND RECOMMENDATION** ) ) ) |
| Defendant. | **)** **)** |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights. The named Defendant is the Director of the South Carolina Department of Corrections.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on January 31, 2005. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on February 4, 2005, advising Plaintiff of the importance of a motion for summary judgment and of the necessity for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendant's motion may be granted, thereby ending his case. After having been granted an extension, Plaintiff filed a response to the Defendant's motion for summary judgment on April 18, 2005. Defendant's motion is now before

the Court for disposition.[1]

**Background**

Plaintiff alleges in his verified Complaint[2] that, since he first entered the Department of Corrections on August 7, 2003, he has been requesting protective custody. Plaintiff alleges that when he first entered into the prison system he was seen by a "Mr. McCall", to whom he gave a list of nine names and told that he [Plaintiff] thought his life was in danger. Plaintiff alleges that he was referred to "Associate Warden Riley", who Plaintiff advised that he had (apparently previously) been in the SCDC prison system and that he was a "snitch". Plaintiff alleges that he told Riley he feared for his life from one of the people he had previously "told on" or from one of their family members or friends. Plaintiff alleges that Riley then had him transferred to the Special Management Unit at the Broad River Correctional Institution on "security detention status", which Plaintiff alleges is for inmates who have broken rules, not for those in protective custody.

Plaintiff alleges that while in the Special Management Unit, he found out that inmate James Simpson was in the same lock-up and was telling everyone that he was a snitch. Plaintiff alleges another inmate told him that he would be harmed if he was transferred to either the Evans or Lee Correctional Institutions, while yet another inmate told him there was a "contract" out on

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

him. Plaintiff alleges that he wrote to "Warden White" about these statements on January 15, 2004, but got no response. Plaintiff alleges that that same evening there was an inmate disturbance in the SMU in which an officer was injured, which Plaintiff believes was actually an effort to get to him to kill him. Plaintiff alleges he sent another request to Warden White for protective custody, but again got no response.

Plaintiff alleges that on February 9, 2004 he was transferred to the Lee Correctional Institution, still in "close custody status", but that after being there two months he realized that James Simpson had also been transferred to the same building. Plaintiff alleges he again requested protective custody on April 28, 2004 and was placed in lock-up. Plaintiff alleges he subsequently appeared before a review board and a "Major Hughes" said that she was going to put him in for statewide protective custody. Plaintiff alleges that, while in lock-up, he also wrote to Associate Warden "Bell" and told her about his situation, but that he never heard back from Bell.

Plaintiff alleges that on May 25, 2004 he was transferred back to the Broad River Correctional Institution and sent to general population. Plaintiff alleges that he was assaulted that night, and the next morning again requested protective custody. Plaintiff was advised that he would have to wait for "Captain Jones" to arrive, and that when Captain Jones did arrive he initially told Plaintiff that he was sending him back to general population. Plaintiff alleges that he explained his situation to Jones and that there was an inmate, Samuel Adams, whom Plaintiff had gotten "busted" back in 1991 or 1992, who was presumably at the same prison.[3] Plaintiff alleges that he was then placed on lock-up, and that the classification worker (Ms. Whitaker) promised to put him in for

---

[3] It is not really clear from Plaintiff's Complaint whether Adams was at the same prison, although the undersigned has assumed for purposes of summary judgment that that was the case.

3

statewide protective custody. However, Plaintiff alleges that Ms. Whitaker never put in that request, and that on June 9, 2004 he wrote the Defendant Ozmint about his situation. Plaintiff alleges he never heard anything back from Ozmint, and that on June 21, 2004 he was told that he was being transferred to the McCormick Correctional Institution.

Plaintiff alleges that when he arrived at the McCormick Correctional Institution he was placed in the general population, and "ran into a friend of someone [Alphonso Richardson] I had told on at the Greenville County Detention Center." Plaintiff alleges that this friend had threatened him [the Plaintiff] at the county jail, and that when he told the supervisor he had been threatened by this inmate, he was again placed on lock-up. Plaintiff alleges that he appeared before a classification board on July 9, 2004, at which time it was recommended by a "classification worker Davis" that he be returned to general population. Plaintiff alleges that he was subsequently ordered to return to general population on July 15, 2004 by a "Sgt. Wright", and that when he [Plaintiff] refused he was written up for refusing to obey a direct order.

Plaintiff alleges that he met with a "Major Lewis" about this disciplinary charge on July 19, 2004, and that he also sent a letter to Warden Rushton. Plaintiff alleges that he was later moved out of "Room 25" in the lock-up and into "Room 20" on July 23, 2004, and that he complained to "Ofc. Terry" that he had enemies and didn't want to be in a room that couldn't be seen by the control room. Plaintiff alleges that his complaints were ignored, and that later an inmate in Room 21 threw a cup of urine on him. Plaintiff alleges that this incident was witnessed by Officer Terry, who did nothing. Plaintiff alleges that after this incident he was moved out of Room 20 that same night by a "Captain Baldwin", but that on July 26, 2004 he was moved back into a corner room by a "Lt. Deckron", following which he complained to Associate Warden

4

Cartledge and to Major Lewis.

Plaintiff alleges that on July 27, 2004 he was taken to see the disciplinary hearing officer (DHO) about his charge of disobeying a direct order. Plaintiff alleges that when he, along with five or six other inmates who were also being taken to the DHO, were told to go into a holding cell, Plaintiff told Lieutenant Deckron that he didn't want to go into the cell because he was afraid he might get hurt. Plaintiff alleges that Deckron was then told by Major Lewis to take Plaintiff back to his cell and charge him.

Plaintiff alleges that the Defendant Ozmint has been given "ample time to address this situation", and that he should be held responsible for Plaintiff not being placed in protective custody. Plaintiff seeks an order from this Court granting him protective custody, and also seeks monetary damages. See generally, Verified Complaint.

In support of summary judgment in the case, the Defendant has submitted an affidavit from Janice Kenealy, who attests that she is Supervisor of the Records Management Area within the Inmate Record's Office, Division of Classification, of the South Carolina Department of Corrections. Kenealy attests that, attached to her affidavit, are true and correct copies of five documents, as follows: Document A is a memorandum from Tessie Smith to James Sligh dated November 18, 2004 regarding a protective custody request from the Plaintiff. This memorandum indicates that Plaintiff's request for admission to statewide protective custody based on Plaintiff's allegations that his life was in danger due to his activity as an informant had been investigated, and that staff at Broad River, McCormick, and Perry [Correctional Institutions] could not substantiate Plaintiff's claims. However, Smith states in this memorandum that the fact that Plaintiff had a reputation among the prison population as an informant had been established, and that state

5

classification was therefore recommending Plaintiff for statewide protective custody for his safety and in the best interest of the agency.

Exhibit B to Kenealy's affidavit is an SCDC transfer form dated November 22, 2004 showing Plaintiff's transfer to protective custody. Exhibit C to Kenealy's affidavit is a copy of the Institutional Classification Committee review for the Plaintiff, showing that the Institutional Classification Committee met on November 22, 2004 for an initial seven day review and found that Plaintiff should remain in protective custody. Two other similar regularly scheduled seven day review forms are attached as Exhibits D and E, both bearing the notation that Plaintiff remained in protective custody status.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d

6

387 (4th Cir. 1990).

After careful review of the evidence and arguments presented, the undersigned finds and concludes that the Plaintiff's claim is without merit, and that the Defendant's motion for summary judgment should therefore be granted. First, it is not clear whether this Defendant is even the proper Defendant to have been sued in this case, since Plaintiff's only reference to this Defendant is his having sent a letter to the Defendant on June 9, 2004 about his situation. There are no facts presented, or even allegations, that the Defendant Ozmint played any role in determining Plaintiff's classification or whether he should be placed in statewide protective custody.[4] Rather, it is readily apparent that Ozmint has been named as the Defendant in this case because he is the Director of the South Carolina Department of Corrections. However, the doctrines of vicarious liability and respondeat superior are not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-929 & nn. 1-2 (4th Cir. 1977).

Unless Plaintiff has alleged specific wrongdoing on the part of the Defendant Ozmint, he may not be held liable for the acts of others absent an official policy or custom for which he was responsible which resulted in illegal action. See generally, Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Wetherington v. Phillips, 380 F.Supp. 426, 428-429 (E.D.N.C. 1974), aff'd, 526 F.2d 591 (4th Cir. 1975); Joyner v. Abbott Laboratories, 674 F.Supp. 185, 191 (E.D.N.C. 1987); Stubby v. Hunter, 806 F.Supp. 81, 82-83 (D.S.C. 1992); See Slakan v. Porter, 737 F.2d 368, 375-376 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 115 S.Ct. 67 (1994); Fisher v. Washington Metro Area Transit

---

[4] Although no such allegations are set forth in the verified Complaint, Plaintiff does argue in his response that the Defendant "Ok'd" the decision on his placement. This unsworn and conclusory allegation is not supported by any evidence that has been presented to this Court.

7

Authority, 690 F.2d 1133, 1142-1143 (4th Cir. 1982) (citing Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980)). Plaintiff has made no claim of any official policy or custom of the Defendant Ozmint which resulted in the allegedly unconstitutional conduct here. Instead, Plaintiff's claim is essentially that lower ranking officials and/or officers in the Department of Corrections failed to comply with his request to be placed in statewide protective custody, and/or that classification workers failed to properly classify him as an inmate in need of protective custody status.

Further, even if Ozmint could be deemed to be a proper party Defendant in this case on the theory that, as Director of the Department of Corrections, he is responsible for how the classification system runs and is therefore responsible for any mistakes made by that classification system, there is no evidence before this Court to show a violation of Plaintiff's constitutional rights. Plaintiff has no constitutional right to placement in any particular prison, nor does he have any constitutional right to placement in any particular custody classification. See Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994) [the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed]; Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."]. Hence, to proceed with this claim, Plaintiff would need to present evidence sufficient to show that, by denying his custody request, a named Defendant displayed a deliberate or callous indifference to a specific known risk of harm to him. Pruitt v. Moore, No. 02-395, 2003 WL 23851094 at *9

8

(D.S.C. July 7, 2003) [only deliberate or callous indifference on the part of prison officials to a specific known risk of harm states on Eighth Amendment claim], cert. denied, 2004 WL 232748 (4th Cir. 2004); Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"]; Farmer v. Brennen, 114 S.Ct. 1970, 1979 (1994) [defendants must have engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result".]; see also Pressly v. Hutto, 816 F.2d 977 (4th Cir. 1987). The undersigned does not find that Plaintiff has presented sufficient evidence to create a genuine issue of fact as to whether the Defendant Ozmint, or any other prison official, was deliberately indifferent to a specific known risk of harm to the Plaintiff.

Plaintiff is correct that, if he was considered a "snitch" or informer by his fellow inmates, his personal safety could be at risk. *Cf.* Miller v. Leathers, 913 F.2d 1085, 1088, n. * (4th Cir. 1990) ["It is impossible to minimize the possible consequences to a prisoner of being labeled a 'snitch'"]; Thomas v. District of Columbia, 887 F.Supp. 1, 4 (D.D.C. 1995) ["In the prison context…one can think of few acts that could be more likely to lead to physical injury [to a prisoner] than spreading rumors of…informing"]. However, the allegations of Plaintiff's Complaint, which the undersigned has assumed to be true for purposes of summary judgment, fail to show a deliberate or callous indifference on the part of prison officials to any specific known risk of harm to the Plaintiff such as to establish a violation of the Eighth Amendment. To the contrary, a fair reading of Plaintiff's allegations is that, every time Plaintiff complained about a potential danger to him, he was placed in lock-up or segregated from other inmates out of the general population. That prison officials may have subsequently determined it was safe for Plaintiff to go

9

back into the general population does not establish a constitutional violation, particularly in light of the fact that Plaintiff would routinely be placed back in lock-up whenever he expressed a general fear for his safety. There is also no evidence before the Court to show that Plaintiff was ever assaulted by any of the inmates he claimed had a grudge against him, while the Defendant's evidence establishes that Plaintiff is currently in statewide protective custody (not because prison officials have been able to substantiate Plaintiff's claims that his life was in danger, but because they were able to confirm that Plaintiff had a reputation as an informant).[5]

In order to show deliberate indifference, Plaintiff must present evidence to show that "the officials act[ed] with a sufficiently culpable state of mind." Strickler v. Waters, 989 F.2d 1375, 1382-1383 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993), quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991); Bagola v. Kindt, 131 F.3d 632, 646 (7th Cir. 1997) ["Although prison officials need not intend that a known risk will actually harm an inmate, they must intentionally ignore this known risk in order to be liable under the Eighth Amendment."]. See also Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) [in order to state a constitutional violation, the deprivation alleged must not only be "objectively significantly serious", but the Defendant must also have acted with a "sufficiently culpable state of mind"]. The undersigned does not find that the reactions of prison officials to Plaintiff's claims as set forth in his Complaint were so unreasonable as to constitute deliberate indifference to a known risk of harm, and Plaintiff's claim that the actions of prison officials violated his constitutional rights is therefore without merit.

Plaintiff is not without a remedy if he believes the actions of prison officials were

---

[5] In his response, Plaintiff states that he still feels like he is in danger, even in his current protective custody status.

unjustified or even negligent, as he may have a claim under state tort law or some administrative remedy he may pursue. However, the sole question before this Court is whether Plaintiff has submitted sufficient evidence to maintain a *constitutional* claim, not whether he may have a claim under some state law or administrative procedure. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]. He has failed to submit evidence to meet this standard. Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]. Therefore, the Defendant is entitled to summary judgment.

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

s/ BRISTOW MARCHANT
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

April  21,  2005

11

**Notice of Right to File Objections to Magistrate Judge's Report and Recommendation**
**&**
**The Serious Consequences of a Failure to Do So**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201